UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN SEGERBERG and CINDY SEGERBERG, as parents and next friend of MATTHEW SEGERBERG, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 12 C 01544 |
| v. | ) ) | Judge Edmond E. Chang |
| PIPE FITTERS' WELFARE FUND, LOCAL 597, successor in interest to Pipe Fitters' Welfare Fund, Local 422, | ) ) ) ) ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs John and Cindy Segerberg allege that Defendant Pipe Fitters' Welfare Fund, Local 597, violated the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.*, when it stopped providing medical benefits to the Segerbergs.[1] The Segerbergs also allege two Illinois state-law claims stemming from this failure to provide benefits, as well as from Local 597's attempt to get reimbursement of medical payments already made. Local 597 moves to dismiss [R. 18] Counts Two (promissory estoppel) and Three (tortious interference)—the two state-law claims in the Segerbergs' Amended Complaint for Declaratory Judgment [R. 14]—pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, Local 597's motion is granted as to both claims.

---

[1]The court has subject matter jurisdiction under 28 U.S.C. § 1331 over the ERISA claim, and supplemental jurisdiction over the state-law claims, § 1367.

**I.**

In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd*, ––– U.S. –––, 131 S. Ct. 2074, 2079 (2011). In 2005, the Segerbergs' son, Matthew,[2] was seriously brain injured during birth. R. 14, Am. Compl. ¶ 7. At the time of Matthew's birth, his father was a participant in Pipe Fitters' Welfare Fund, Local 422, which was an entity providing medical benefits to its working and retired members and their families. *Id.* ¶¶ 6, 8. As a plan beneficiary, Matthew received medical benefits from Local 422. *Id.* ¶ 9.

During the time when Matthew was receiving benefits from Local 422, his mother settled a lawsuit for damages relating to Matthew's birth injuries. *Id.* ¶¶ 11-12. Local 422 never requested that the Segerbergs sign a subrogation agreement for the settlement amount, even though Local 422 could demand subrogation under the terms of the Summary Description and Plan Document. *Id.* ¶¶ 14-15. Additionally, Local 422 placed a medical lien on the settlement amount, settled that lien for an amount less than the full amount of benefits it had paid, and continued to provide Matthew with medical benefits. *Id.* ¶ 17-19.

In 2011, Local 422 merged with Local 597 and Local 422 ceased to exist. *Id.* ¶ 20. In March of that year, Local 597 advised John Segerberg that, pursuant to Local 422's plan terms, it was denying future benefits to Matthew and seeking an offset of

---

[2]Plaintiffs' response did not redact Matthew's name down to his initials, *see* Fed. R. Civ. P. 5.2(a)(3), so the redaction protection was waived, Fed. R. Civ. P. 5.2(h).

medical benefits paid after the settlement of the lawsuit. *Id.* ¶ 22. Local 597 then contacted Matthew's medical providers directly to seek the offset. *Id.* ¶ 23.

The Segerbergs make three claims in their Amended Complaint, the last two of which are at issue here. In Count Two, the Segerbergs assert a promissory estoppel claim. They allege that Local 422 made an implied promise that it would continue to pay Matthew's medical benefits by not requesting the Segerbergs sign a subrogation agreement and by settling the medical lien for less than the amount of benefits paid out. *Id.* ¶ 34. The Segerbergs detrimentally relied on this promise when they restricted their medical providers and services to those covered by Local 422, which may have been more expensive or less preferable than those outside Local 422's plan. *Id.* ¶ 35. They would also have chosen out-of-plan medical providers had they known that Local 597 would seek reimbursement of the payments made to Matthew. *Id.* ¶ 38. (The allegations do not, however, state how the Segerbergs could have actually suffered damages by choosing those providers and services where the plan had been paying for them.)

In Count Three, the Segerbergs allege that Local 597 tortiously interfered with the business relationships between the Segerbergs and their medical providers by seeking reimbursement of Matthew's medical benefits directly from the providers. *Id.* ¶ 44. They allege that this caused several providers to refuse to continue providing Matthew with care. *Id.* ¶ 45.

3

## II.

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678-79. In considering a motion to dismiss, a court may review exhibits attached to the complaint without converting the motion to one for summary judgment. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002).

**III.**

Local 597 moves to dismiss Counts Two and Three, arguing that ERISA completely preempts state-law claims that relate to ERISA-regulated benefit plans and that are brought by plan participants or beneficiaries.[3] As detailed below, Count Two (the promissory estoppel claim) is preempted because it seeks to compel continued payment of benefits; there might be conceivable reliance damages theories, but Plaintiffs do not advance them in their brief. Count Three (the tortious interference claim) is preempted because it could have been made under ERISA's civil enforcement provision, § 502(a)(1)(B), and is not an independent legal claim. Because the tortious interference claim is preempted by ERISA, it must be dismissed because it fails to state a claim upon which relief can be granted under ERISA.

**A.**

**1.**

Subject to certain exceptions, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). ERISA instead creates a federal right of action for a plan participant or beneficiary "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). This civil enforcement scheme has extraordinary preemptive power. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 209 (2004). This preemptive power

---

[3] The parties do not dispute that the Segerbergs are plan participants, or that Local 597 is an ERISA-regulated benefit plan.

is expressed in the breadth of the two-part test to evaluate preemption: "[1] if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and [2] where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted." *Id.* at 210. If both prongs are met, then the state-law claim is preempted.

Under the first prong of *Davila*'s two-part test—whether an individual could have brought a claim under ERISA—the Seventh Circuit has held that plan participants may not bring state-law claims against their plans to recover plan benefits. *See McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 429 (7th Cir. 2005). Indeed, ERISA preempts attempts by plan participants to allege promissory estoppel as a means to compel plans to pay benefits. *Pohl v. National Benefits Consultants, Inc.*, 956 F.2d 126, 127 (7th Cir. 1992). Otherwise, a participant could use state law to obtain benefits to which the written terms of their plan do not entitle them. *Id.* at 128.

Under the second prong—whether a defendant's actions implicate an independent legal duty—a court must determine whether interpretation of the terms of the benefit plan forms an essential part of the plaintiff's state law claim (if it does, then the duty is not independent of the plan and preemption still applies). *Davila*, 542 U.S. at 213. In *Davila*, the Supreme Court held that ERISA preempted state-law claims brought by plan participants against their HMOs for failing to exercise ordinary care in handling their coverage decisions. *Id.* at 214. In so holding, the Court reasoned that the proximate cause of any injury was the failure of the plaintiffs' plans to cover the requested treatment, not the HMOs' decision-making. *Id.* at 213; *accord McDonald*,

425 F.3d at 429. As a result, the state-law claims necessarily required interpretation of the terms of the benefit plan, and the claims were preempted. *Davila*, 542 U.S. at 213.

2.

There are two plausible readings of the Segerbergs's promissory estoppel claim (Count Two), but one of them is not defended in the response to the dismissal motion. The first is that Local 422 made an implied promise that Matthew's medical benefits would continue after they did not request the Segerbergs sign a subrogation agreement and settled their medical lien for less than the amount of benefits paid out. Am. Compl. ¶ 34. The Segerbergs then relied on this promise by retaining medical providers within Local 422's plan instead of outside the plan—a fact Local 422 was aware of. *Id.* ¶ 36. This reliance was to the Segerbergs' detriment when Local 597 sought reimbursement of medical payments and refused to pay further benefits. *Id.* ¶ 38. The Amended Complaint's prayer for relief then asks this Court for a declaratory judgment that Matthew is entitled to continued medical benefits. *Id.* at 9. Taken together, this reading of Count Two alleges that Local 597 is estopped from denying the Segerbergs medical benefits, an argument that the Segerbergs appear to make in their Response to Defendant's Motion to Dismiss. *See* R. 26 at 10 (describing the issue as whether "whether Local 422's conduct . . . estops Local's [sic] 597 from taking a position inconsistent with Local 422's conduct.").

This reading of Count Two is preempted by ERISA. Under this version of the promissory estoppel claim, the Segerbergs are participants in Local 597's plan and

7

assert the estoppel claim to compel Local 597 to continue paying benefits. The Segerbergs could therefore have brought this claim under ERISA directly—as, indeed, they actually did in Count One—which fails *Davila*'s first prong. *See Davila*, 542 U.S. at 210; *Pohl,* 956 F.2d at 127. Although the Segerbergs rely on *Franciscan Skemp Healthcare, Inc. v. Central States Joint Board Health and Welfare Trust Fund*—where a healthcare provider's estoppel claim against an employee benefit plan was not preempted—that decision turned on the fact that the healthcare *provider* was not bringing its claim as a plan *beneficiary*. *See* 538 F.3d 594, 601 (7th. Cir. 2008). That is not this case, where plan beneficiaries are bringing an action that falls squarely within ERISA. Moreover, the complaint itself alleges that Local 597's decision to seek reimbursement of Matthew's medical benefits was purportedly premised upon Local 422's plan document. *See* Am. Compl. ¶ 22. Like in *Davila*, the proximate cause of the injury suffered by the Segerbergs—revocation of plan benefits—was thus the alleged failure of the plan to provide the benefits. *See Davila*, 542 U.S. at 213; *McDonald*, 425 F.3d at 429. So this reading of Count Two also fails *Davila*'s second prong, and is preempted by ERISA.

It might be possible to read Count Two in a way that seeks more limited relief, but the Segerbergs do not develop any argument in their response brief in support of a narrower theory. A more limited reading of the promissory estoppel claim might be based on the allegation that the Segerbergs chose medical providers and medical services within Local 422's plan based on Local 422's implied promise to continue providing medical benefits. Am. Compl. ¶ 35. The Segerbergs allege that these

8

providers and services may have been more expensive than or less preferable to providers and services outside of their plan. *Id.* The Segerbergs could also have chosen out-of-plan providers had they been aware that Local 597 would seek a reimbursement of medical payments made. *Id.* ¶ 38. Based on those allegations, if Local 597 were really seeking reimbursement from the Segerbergs for the past payments, then perhaps the Segerbergs could seek (if they were to be found liable for reimbursement) an offset against the reimbursement equal to the amount of the difference between the cost of retaining in-plan providers and services and the cost of retaining cheaper or more preferable out-of-plan providers and services. The basis for the offset would be that the Segerbergs relied on the plan's implied promise to pay in picking the more expensive options, and thus the plan should be estopped from recovering the difference between the more and less expensive options.[4] But, to repeat, the Segerbergs do not assert this form of reliance damages (really, an offset) in their response to the dismissal motion. If the Segerbergs wish to propose an amended complaint that alleges this theory, they must move for leave to amend, explain the claim's legal basis, and allege a plausible factual basis for the claim. The motion must be filed within 21 days of the entry of this opinion.

---

[4]This narrower reading of the promissory estoppel claim might survive ERISA preemption because such a claim (assuming it is worth bringing) would not seek medical benefits from Local 597 at all, but rather would seek only *reliance* damages arising from an implied promise made by Local 422 to continue providing medical benefits (assuming, without deciding, that such a promise was made).

9

**B.**

In Count Three, the Segerbergs allege that Local 597 tortiously interfered with their business relationships with Matthew's medical providers when Local 597 sought reimbursement of benefit payments from the providers directly. Am. Compl. ¶ 44. They further allege that this caused some of the providers to refuse to continue providing Matthew with care. *Id.* ¶ 45.

Under *Davila*'s two-part framework, the tortious interference claim is preempted by ERISA. ERISA plan participants who bring tortious interference claims premised upon state law could have brought those claims under ERISA's civil enforcement provision. *See, e.g.*, *Maciosek v. Blue Cross & Blue Shield United of Wis.*, 930 F.2d 536, 540 (7th Cir. 1991). In response, the Segerbergs characterize Count Three as a claim about Local 597's conduct, not about the plan's denial of benefits. *See* R. 26, Pls.' Resp. at 11-12. This argument does not withstand *Davila*'s second prong. Under Illinois law, tortious interference with business relations requires that the plaintiff prove, among other elements, "the defendant's intentional and unjustified inducement of a breach of the contract." *E.g.*, *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 676 (Ill. 1989) (citation omitted). Whether or not Local 597 was justified in seeking reimbursement from the Segerbergs' medical providers directly depends on whether the Segerbergs properly owed them an offset of medical benefits. This in turn directly depends on Local 422's plan terms. Indeed, Local 597 purported to rely on provisions of Local 422's Plan Document when it advised John Segerberg in its March 14, 2011

10

letter that it sought an offset of medical benefits provided. *See* Am. Compl. ¶ 22. Because this state-law claim of tortious interference necessarily requires the Court interpret Local 422's plan terms, Count Three is preempted by ERISA.

ERISA preemption of the state-law tortious interference claim does not end the inquiry. Under Rule 8(a), a complaint need not plead both law and fact. *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1077-78 (7th Cir. 1992). Accordingly, a Rule 12(b)(6) motion requires that the Court determine "whether relief [is] possible based on any legal theory—ERISA included." *McDonald*, 425 F.3d at 428. Therefore, even though ERISA preempts the *state*-law version of tortious interference, the Court must determine whether *ERISA* itself permits the Segerbergs to bring an ERISA-based tortious interference claim. *See id.* at 428-30; *see also Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 (4th Cir. 2002).

Although courts may use state common law as a basis to develop ERISA-based causes of action, *Trustmark Life Ins. Co. v. Univ. of Chi. Hosps.*, 207 F.3d 876, 881 (7th Cir. 2000), the Court will not do so here. Recognizing a cause of action for tortious interference of contract is unnecessary for the enforcement of ERISA: if the Segerbergs were improperly denied benefits, they can directly allege an ERISA violation through its civil enforcement provision—as they did in Count One. *See Health Cost Controls v. Manetas*, 1995 WL 66383, at *6 (N.D. Ill. Feb. 13, 1995) (Castillo, J.). On the other hand, if the Segerbergs were properly denied benefits, then Local 597's conduct was consistent with its rights under the statute and could not have been tortious. Allowing a tortious interference claim to go forward in that instance would thus thwart ERISA's

11

policies. *See, e.g., Hospital Corp. of Am. v. Pioneer Life Ins. Co. of Ill.*, 837 F. Supp. 872, 875 (M.D. Tenn. 1993). Therefore, because Count Three is preempted by ERISA, and there is no need to create an ERISA-based action for tortious interference, Local 597's motion to dismiss Count Three is granted.

## IV.

For the reasons discussed above, the Court grants Defendant's motion to dismiss the promissory estoppel claim (Count Two) and the tortious interference claim (Count Three). R. 18.

ENTERED:

*Edmond E. Chang*
_____
Honorable Edmond E. Chang
United States District Judge

Date: January 22, 2013